UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SEAN DAY, ON BEHALF OF
HIMSELF AND THOSE
SIMILARLY SITUATED,

     Plaintiff,

vs.                       Case No.: 6:13-CV-871-ORL-18KRS

SCOTT CLYMO, D/B/A EZLOANS.BIZ

     Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE OR IN THE ALTERNATIVE TO COMPEL ARBITRATION AND INCORPORATED MEMORANDUM OF LAW

COME NOW, Defendant SCOTT CLYMO D/B/A EZLOANS.BIZ, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 126(b)(6), and hereby files his Motion to Dismiss for lack of subject matter jurisdiction, or in the alternative, to compel mediation and arbitration, and as grounds therefore state as follows:

The present action is one brought pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq. Plaintiff alleges that he is due overtime compensation, which Defendant denies. Plaintiff was an independent contractor engaged by the Defendant as a sales agent. The parties relationship is governed by the Agent Agreement (attached hereto as *Exhibit A*). The Agent Agreement provides at paragraph 10.2:

> All disputes between Company and Agent will be mediated under the rules of the American Arbitration Association or other mediator agreed upon by the parties. the Parties will equally divide the mediation fee, if any. Any dispute not resolved by mediation will be settled by neutral binding arbitration in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon the parties.

A. Motion to Dismiss Pursuant to <u>Fed. R. Civ. Proc. 12(b)(6)</u>

The Plaintiffs' complaint is subject to dismissal pursuant to <u>Fed.R.Civ.P. 12(b) (1)</u>. Dismissal of a case for lack of subject matter jurisdiction under <u>Rule 12(b)(6)</u> is proper "when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States,</u> 201 F.3d 110, 113 (2d Cir.2000). In resolving a motion to dismiss for lack of subject matter jurisdiction under <u>Rule 12(b)(6)</u>, a district court may refer to evidence outside the pleadings. *See* <u>Kamen v. American Tel. & Tel. Co.,</u> 791 F.2d 1006, 1011 (2d Cir.1986). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See* <u>Malik v. Meissner,</u> 82 F.3d 560, 562 (2d Cir.1996).

Plaintiff's complaint asserts that jurisdiction lies in this case pursuant to <u>28 U.S.C. § 1331</u> based on a federal question in light of the claim under the FLSA. However, Plaintiff has failed to comply with a condition precedent to litigation in their Agent Agreement which required Plaintiff to submit his dispute to non-binding mediation, and then to binding arbitration if mediation is unsuccessful. Therefore, the Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.

B. Motion to Compel Mediation and Arbitration

The Agent Agreement in this case contains a mediation/arbitration clause which required the parties to submit any and all disputes to nonbinding mediation, and if necessary to binding arbitration, prior to instituting litigation.  Congressional policy, as

embodied in the Federal Arbitration Act ("FAA"), favors enforcement of such clauses in commercial contracts. *See Mitsubishi Motors Corp. v. Soler Chrysler—Plymouth, Inc., 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 2* of the Act expresses this preference, stating that written agreements to arbitrate in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A further provision requires courts to stay judicial proceedings pending arbitration if the court is satisfied that the issues presented are arbitrable or, in other words, contemplated by an agreement to arbitrate. *See* 9 U.S.C. § 3. These statutory provisions remain mandatory, as the Supreme Court emphasized in *Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)*:

> [T]he [Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

Furthermore, at this stage of the litigation, a court should not consider the merits of the underlying controversy. Rather, the only issue is whether the parties have agreed to mediate the dispute. *See Mitsubishi, 473 U.S. at 628.*

In considering a motion to compel arbitration or mediation a court must determine whether the issues presented are arbitrable. *See First Options v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).* First, the court  must determine whether

the parties agreed to arbitrate. If they have, it must then assess the scope of their agreement to determine whether it encompasses the asserted claims. Genesco, 815 F.2d at 844. Any doubts concerning the scope of arbitrable issues "should be resolved in favor of arbitration." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 248 (2d Cir.) (citing *Moses H. Cone Mem. Hosp.,* 460 U.S. at 24–25), *cert. dismissed,* 501 U.S. 1267 (1991); *see also Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78, 81 (2d Cir.1983).

There is no doubt that the Agent Agreement contains a mediation/arbitration clause. Therefore, the next factor in determining whether to compel mediation and arbitration in this matter is whether the Plaintiff's claim  fits within the terms of the mediation/arbitration clause. As stated above, federal policy strongly favors arbitration and mediation. Specifically, plaintiff alleges that he was denied overtime compensation as guaranteed by the FLSA.

The Supreme Court has stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25; *see also AT & T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (stating that presence of arbitration clause creates presumption of arbitrability). This court must construe the mediation/arbitration clause as broadly as possible, and should grant the request for an order to compel mediation/arbitration "unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs.,* 475 U.S. at 650 (citing *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

The presumption in favor of arbitration acquires particular significance when the arbitration clause is broadly worded as is the mediation/arbitration clause  in the present case. *See AT & T Technologies,* 475 U.S. at 650; *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir.1991) (stating that, in cases of broadly worded arbitration clauses, "the strong presumption in favor of arbitrability applies with even greater force"). Here, the mediation/arbitration    clause refers the parties to mediation/arbitration for all disputes. Such language calls for mediation/arbitration of any grievance between the parties. *AT & T Techs.,* 475 U.S. at 650 (quoting *Warrior & Gulf,* 363 U.S. at 584–85); *see also Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling of New York,* 749 F.2d 124, 126 (2d Cir.1984); *Wire Serv. Guild, etc. v. United Press Int'l, Inc.,* 623 F.2d 257, 260 (2d Cir.1980) (stressing that language exempting certain disputes from arbitration clause must be "clear and unambiguous" or "unmistakably clear"). There is no factual, practical or legal evidence upon which to distinguish the claim set forth in the complaint from the agreement to mediate/arbitrate since the complaint unquestionably raises a "dispute" between the parties.

WHEREFORE, the Defendant, SCOTT CLYMO D/B/A EZLOANS.BIZ, respectfully requests that the Court dismiss the complaint, or in the alternative enter an order compelling the parties to mediate and arbitrate this dispute.

Respectfully Submitted,

DATED:  July 2, 2013

/s/ R. Paul Roecker, Esq.
R. Paul Roecker, ESQ.
Florida Bar No. 120073
Executive Law Group
3001 N. Rocky Point Drive E
Suite 200
Tampa. FL 33607
813.367.3505
813.333.7321 (facsimile)
paul@execlawgroup.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of July, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will provide electronic notice of such filing to all counsel of record.

/s/ R. Paul Roecker, Esq.
R. Paul Roecker, Esq.



## AGENT AGREEMENT

THIS AGREEMENT is entered into as of ___11/21_____, 2012

Between EZ LOANS.biz ("Company") and

_____Sean Day_____ ("Agent").

RECITALS:   Company helps merchants and others ("Subscribers") establish a cash advances and related services ("the EZ LOANS.biz" program"). The Agent works with Subscribers in the course of its business that would benefit from having access to the EZ LOANS.biz" program. Accordingly, the Agent desires to market the EZ LOANS.biz" program as part of its own programs and services, and to refer Subscribers to Company for application to the EZ LOANS.biz" program. In return, Company desires, subject to the terms set forth herein, that Agent is (i) authorized to market the the EZ LOANS.biz" program, and (ii) compensated for such referrals.  Agent will also oversee and manage other Agents and be compensated for such duties.

NOW THEREFORE, for good and valuable consideration, and the mutual promises contained herein, the parties hereto agree as follows:

**Article 1.** Grant of Right to Market:

**1.1** Company hereby grants to Agent the non-exclusive right and authority to market the EZ LOANS.biz" program, in conjunction with its programs and services.  The Agent shall conduct these marketing activities pursuant to, and shall at all times abide by, the recommendations, rules, guidelines, directives and policies of Company, its vendors, and Visa/Mastercard associations and networks, all as delineated to Agent, and as amended from time to time.

**1.2** Agent shall also install and host product/services information, in accordance with Visa/Mastercard rules and regulations, on its website.  Agent shall submit completed merchant application documents to Company.  Agent shall use its best efforts to insure that information provided to Company concerning Subscribers is true and accurate in all respects.

**Article 2.**   Company Assistance. Company agrees that it will provide Agent, at Company's' sole cost and expense, with such training materials, sales materials, banners, and other supplemental materials as deemed necessary by Company for Agent to market the EZ LOANS.biz program.  Agent acknowledges that all such materials are owned exclusively by Company, and delivered to Agent as a bailee solely in furtherance of this Agreement.

Exhibit "A"

**Article 3.** <u>Non-Solicitation of Merchants</u>.   During the period from the date of this agreement to the expiration of this agreement Agent shall not directly or indirectly, through any agent or representative, on behalf of himself or any other person or entity, in any capacity whatsoever, without the prior written consent of Company, (i) cause or induce any Merchant to do business with any competitor of Company or to cease doing business with, reduce business with, or divert business from Company.

**Article 4.** <u>Compensation</u>.   Agent will be entitled to receive compensation for each Accepted Subscriber it has referred to Company the nature of such compensation, and manner of its computation and payment, is established in Schedule A attached hereto. No compensation shall be earned by Agent for any Subscribers whose application is rejected by Company or its partners.

**Article 5.** <u>Term and Events of Default</u>.

**5.1** This Agreement shall continue in full force and effect for a period of (3) years from the date set forth above. Upon the expiration of such period, this Agreement shall be renewed for subsequent one (1) year periods, unless either Company or Agent provides notice prior to such renewal of its intent not to renew, whereupon this Agreement shall terminate.

**5.2** If a party breaches or fails to perform its obligations under this Agreement, then the non-breaching party shall have the right to terminate this Agreement, upon ten (10) days' written notice to the breaching party;  provided, however, that if such breach or default is cured within such ten (10) day period, the Agreement shall continue.

**5.3** If Agent Defaults, Breaches or Fails to perform its obligations under this agreement; Agent will be notified by Company and Agent will forfeit all pending income and any future income of any kind including commission, bonuses and residuals.

**Article 6.** <u>Certain Covenants of Agent</u>.   The Agent is, and shall at all times be, an independent contractor with respect to the subject matter of this Agreement, and agrees that it will at all times hold itself out as an independent contractor.   Agent is not an employee, partner or joint venturer of Company, and has no authority to bind Company under any circumstances.   Agent recognizes and acknowledges that they are an independent sales agent working on an exclusive basis for Company under the terms of this agreement and one year after the dissolution of this agreement they will not represent any other company, entity, individual or agent that is in direct competition with Company ay anytime whatsoever in any capacity whatsoever. Agent recognizes that a breach of this Article 6 will cause irreparable harm to Company and that, therefore, Company shall be entitled to injunctive relief in addition to such other remedies as may be available.

**Article 7.**   <u>Indemnification</u>. Agent hereby agrees to indemnify and hold Company harmless from any and all claims, damages, liabilities, and expenses, including attorneys' fees and litigation costs, arising from the performance or nonperformance of Agents obligations under this Agreement including, but not limited to, any negligence of Agent or any alleged or actual violations by Agent (or its subcontractors, agents, representatives or employees) of any governmental laws, regulations or rules. Company and Agent agree, however, that Agents indemnity does not extend to any unpaid charge or loss due to fraud by someone other than Agent in connection with the EZ LOANS.biz program.

**Article 8.** <u>Confidentiality</u>.

**8.1** Agent acknowledges that, during the course of its performance under the terms of this Agreement, it may gain possession or knowledge of confidential information of Company.  Agent recognizes that such information constitutes a valuable asset of Company, and agrees that it shall not disclose any such information to any third person, and that it shall not use such information except to perform services under this Agreement.  Agent recognizes that a breach of this Article 8 will cause irreparable harm to Company and that, therefore, Company shall be entitled to injunctive relief in addition to such other remedies as may be available.

**8.2** Upon termination of this Agreement, Agent shall return to Company all information, data, forms, discs, and materials provided by Company or at Company's direction.

**Article 9.**  Notices.  Any and all notices, requests, demands and other communications which are required or may be given under or in connection with this Agreement shall be in writing and shall be deemed given when delivered in person, or if mailed, addressed to the party to whom it is to be given at the address hereinafter specified:

**If to EZ LOANS.biz:**

EZ LOANS.biz 1228 Croftwood Dr., Melbourne, FL 32935, Attn:  Scott Clymo

**If to Agent:**

Name: _Sean Day_

DBA: _Sean Day_

Address: _1790 Sandbar Drive_

_Merritt Island, FL  32953_

ATTN: _Sean Day_

Phone: _920-205-0259_ Fax: _____

Email: _Sean.Day@Live.com_

**Article 10.** Miscellaneous.

**10.1** This is the entire Agreement between Agent and Company with respect to the subject matter hereof, and supersedes any prior agreement, oral or written, between Agent and Company.  This Agreement may only be amended by a writing signed by the parties hereto.

**10.2** This Agreement will be constructed under Florida Law.  All disputes between Agent and any other Company  Agent will be solved by Company; this will be determined by the owner of Company at owners sole discretion.  All disputes between Company and Agent will be mediated under the rules of the **American Arbitration Association** or other mediator agreed upon by the parties.  The Parties will equally divide the mediation fee, if any.   Any dispute not resolved by mediation will be settled by neutral binding arbitration in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon the parties.  Each party to any arbitration or litigation (including appeals and interpleaders) will pay its own fees, costs and expenses, including attorneys' fees at all levels, and will equally split the arbitrators' fee and administrative fees of arbitration.

**10.3** In the event that any action, suit or proceeding is brought under or in connection with this Agreement, the prevailing party therein shall be entitled to its costs, expenses and reasonable attorney fees.

**10.4** If any provision of this Agreement is at any time adjudged invalid or unenforceable to any extent by any Court of competent jurisdiction, such provision shall be deemed modified to the extent necessary to render it valid and enforceable, and such invalidity or unenforceability shall not affect any other provision of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

Company:

By: _____

Title: _____President_____

Agent:

By: _Sean Day_____

Title: _Cash Advance Specialist_____

If a Corporation, place your Federal Tax ID Number here:

_____

If a Sole Proprietor, place your Social Security Number here:

_____39202-8562_____

Personal Information of Business Owner:

Name: _____

Home Address: _____

_____

Home Telephone: _____

Social Security#: _____

# Schedule A

**AGENT COMPENSATION**

*Upfront Compensation* – Compensation that will be paid to Agent  for cash advances or accounts initiated and written by Agent that are sold to outside sources by Company at a discounted amount.

*Active Account* – An "Active Account" is an account currently in a cash advance.

*Active Agent* – Agent that does not violate or breach Agreement and is actively calling on business owners on behalf of Company.

Example of Accounts written that will pay upfront compensation to Agent

*Business Cash Advance
*Business Loans

**Percentage of Cash Advance Paid to Agent:**   Agent will be paid 1% of the funded face value of the cash advance amount that is initiated by Agent and funded to merchant.  Agent will be paid .05% of the funded face value of the cash advance amount that is renewed by merchant that was originally initiated by Agent as long as Agent is Active with Company.

Example:  Initial Cash Advance amount to merchant = $45,000.00
Upfront commission paid is $450.00.
Renewal Cash Advance amount to merchant = $75,000
Upfront commission paid is $375.00
Each time the merchant renews regardless of the number of times of renewals the Active Agent that initiated the original cash advance will be paid the commission even though they are not the one handling the renewals.

**Termination of Residuals:**  Company shall continue to pay Agent residual compensation specified above for so long as Agent does not violate the Agreement outlined in Agent Agreement or for as long as Company continues to receive fees from accepted subscribers whose cash advances etc. that were obtained by Agent and for as long as Agent is active with Company and continues to send in new applications monthly.   If the Agreement is terminated by Agent or Company, residuals or payments will no longer be due to Agent.

**Timing of Compensation:**  Upfront commission compensation will be paid by the following Friday of all approved accounts that are funded for the week earlier in by Friday.  Renewal commission compensation and bonuses will be paid by the 15th of the month for the previous month.

Additional monthly production bonuses, spiffs, awards, and cash incentives will be paid as announced by Company management each month.

Both parties agree to and fully accept this schedule A in its entirety by signing below:

Signed this _____21th_____ day of ___November___, 2012.


Agent: _~Sean Day~_____ Date: _11/21_____

Print Full Name: _Sean Day_____ Title: _Agent_____

EZ
Loans.biz: _~Scott W~_____ Date: _1/10/2013_
        Scott Clymo, Owner

Print Full Name: _Scott Clymo_____ Title: _President_